**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**

---

| | |
|---|---|
| IN RE NATIONWIDE FINANCIAL : SERVICES LITIGATION : : | Case No. 2:08-CV-00249 |

---

**OPINION AND ORDER**
**APPROVING CLASS SETTLEMENT, CERTIFYING CLASS**
**AND AWARDING ATTORNEYS' FEES AND COSTS**

Plaintiffs Intermountain Ironworkers Trust Fund and International Brotherhood of Electrical Workers Local 98 Pension Fund ("Plaintiffs") bring this class action lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure asserting, *inter alia*, that Defendants breached fiduciary duties owed to Plaintiffs and other holders of Class A shares of Nationwide Financial Services, Inc. ("NFS") in connection with a proposal from Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company and Nationwide Corporation (collectively "Nationwide Mutual") to acquire by merger all of NFS's outstanding publicly held shares of Class A common stock (the "Class A Shares") for $47.20 per share in cash ("Merger Proposal"). The parties reached a Stipulation of Settlement on January 1, 2009 (Doc. 17-3), which included an increase in the proposed Merger price of $5.05 per share, to $52.25 per share (a 10.7% increase), and additional disclosures in the final proxy statement issued to NFS shareholders in connection with the proposed Merger.

This matter is now before the Court on Plaintiffs' Motion for Final Approval of Proposed Class Action Settlement and for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Doc. 25). The motion is supported, *inter alia*, by

a Declaration of Jeffrey W. Golan ("Golan Decl."), one of the Co-Lead Counsel in this case (Doc. 25-7), and an Affidavit of Steven Platt ("Platt Aff.") regarding the mailing of the notice and other matters (Doc. 28).

## I.    Approval of Proposed Class Settlement

The Court recognizes that settlement of a class action is generally favored and encouraged. *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *accord In re Telectronics Pacing Sys. Inc.*, 137 F. Supp. 2d 985, 1008 (S.D. Ohio 2001); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 371 (S.D. Ohio 1990). Nonetheless, "[c]lass actions are unique creatures with enormous potential for good and evil." *Johnson v. General Motors Corp.*, 598 F.2d 432, 439 (6th Cir. 1979) (Fay, J., concurring).

In recognition of this, Fed. R. Civ. P. 23(e) provides important protections for class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983).  To this end, Rule 23(e) requires three steps for the approval of a proposed class action settlement:

1.    The Court must preliminarily approve the proposed settlement;

2.    Members of the class must be given notice of the proposed settlement; and

3.    A fairness hearing must be held, after which the court must determine whether the proposed settlement is fair, reasonable and adequate.

Fed. R. Civ. P. 23(e); *Williams v. Vukovich*, 720 F.2d 909, 920-21 (6th Cir. 1983); *Bronson v. Bd. Of Educ.*, 604 F. Supp. 68, 71 (S.D. Ohio 1984).  In the instant case, the first two steps have been satisfied.  The Court has preliminary approved the proposed

Settlement.  In addition, the class was given notice of the proposed Settlement, and the Court finds that the notice was the best notice practicable under the circumstances.  In addition, the Court conducted a fairness hearing on June 23, 2009.  Thus, it only remains for this Court to decide whether the Settlement is fair, reasonable and adequate.  Fed. R. Civ. P. 23(e).

The determination of whether a proposed class settlement is fair, reasonable and adequate requires the Court to consider and balance several factors, which include:

1. Plaintiffs' likelihood of ultimate success on the merits balanced against the amount and form of relief offered in settlement;

2. The complexity, expense and likely duration of the litigation;

3. The stage of the proceedings and the amount of discovery completed;

4. The judgment of experienced trial counsel;

5. The nature of the negotiations;

6. The objections raised by the class members; and

7. The public interest.

*In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 372 (S.D. Ohio 2006); *In re Telectronics*, 137 F. Supp. 2d at 1009.  However, while courts have discretion in determining whether to approve a proposed settlement, they should be hesitant to engage in a trial on the merits or to substitute their judgment for that of the parties who negotiated the proposed settlement. *See Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 831 (E.D. Mich. 2008).  Thus, in determining the reasonableness and adequacy of a proposed settlement, the Court should ascertain whether the settlement is within a "range of reasonableness," *Leonhardt*, 581 F. Supp. 2d at 831, and in the end, the Court's

determinations are no more than "'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (quoting *City of Detroit v. Grinnell Corp*, 495 F.2d 448, 468 (2d Cir. 1974)).

### A. The Likelihood of Ultimate Success on the Merits Balanced Against the Amount and Form of Relief Offered in the Settlement

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits." *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Thus, in assessing the Settlement, the Court should balance the benefits afforded to members of the Class, and the *immediacy* and *certainty* of a substantial recovery for them, against Plaintiffs' likelihood for success on the merits. *See In re Telectronics*, 137 F. Supp. 2d at 1010; *see also In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998); *City of Detroit*, 495 F.2d 448 at 463. Moreover, as one court noted, "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced." *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F. 2d 1079, 1085-86 (2d Cir.), *cert. denied*, 404 U.S. 871 (1971).

In the instant case, the prospect of recovery, had Plaintiffs proceeded to trial, was less than certain. Plaintiffs would have faced significant risks in establishing liability and damages in the instant case. In order for Plaintiffs to prevail at trial, Plaintiffs would need to prove the following elements: "(1) the existence of a duty arising from a fiduciary relationship, (2) a failure to observe such duty, and (3) an injury proximately resulting therefrom." *Unencumbered Assets, Trust v. JP Morgan Chase Bank*, Case Nos. 2:03-md-1565 and 2:04-cv-1090, 2009 U.S. Dist. LEXIS 44174, at *54 (S.D. Ohio May

11, 2009). Failure to prove one of these elements could prevent Plaintiffs from obtaining any recovery through litigation, even after months, perhaps years, of prosecuting this Action.

Plaintiffs would certainly have faced challenges that they have failed to rebut the presumption under the business judgment rule that "directors are better equipped than courts to make business judgments and that the directors acted without self-dealing or personal interest and exercised reasonable diligence and acted in good faith." *In re Nat'l Century Fin. Enters., Inv. Litig.*, 504 F. Supp. 2d 287, 312 (S.D. Ohio 2007). Plaintiffs would also have had to overcome the possibility that a fact-finder would find that the members of the NFS Board of Directors acted reasonably and prudently when they established a special committee to negotiate with Nationwide Mutual, and that the special committee acted reasonably and prudently when they (a) engaged independent legal and financial advisors; (b) instructed their advisors to conduct detailed analyses of the Merger Proposal; (c) instructed their advisors to negotiate for a higher price from Nationwide Mutual, and regularly consulted with their advisors concerning the negotiations; and (d) eventually agreed – as did the Plaintiffs – to the increased Merger price of $52.25 per share.

Defendants would also likely have argued that Plaintiffs had failed to establish that Defendants' actions proximately caused any alleged damages. Inevitably, the question of proximate causation and damages would necessitate expert testimony. As the court stated in *United States v. 412.93 Acres of Land*, 455 F.2d 1242, 1247 (3d Cir. 1972), "it is certainly not inconceivable that, in the unavoidable 'battle of experts,' a jury might disagree with [the Plaintiff Class]." Acceptance of expert testimony is always far

from certain, no matter how qualified the expert, inevitably leading to a "battle of the experts." The Settlement agreement reached by the parties avoids the risks attendant to this "battle of the experts," which could result in a ruling against Plaintiffs.

Collectively, these factors could have led to dismissal of all or part of Plaintiffs' claims, or have led to a a defense verdict at trial. *See Biben v. Card*, 1991 WL 272848 at *1 (W.D. Mo. Dec. 10, 1991) ("a jury verdict in [plaintiffs'] favor against the settling Defendant is by no means a certainty").

In comparison, the Settlement provides Plaintiffs and the Class with very significant economic and non-economic benefits, which include: (a) an increased share price of $52.25, an increase of $5.05 from $47.20 per share – an aggregate economic benefit of $232.8 million (*see* Golan Decl. ¶ 14); and (b) additional, material information that was included in the final proxy statement issued to NFS shareholders in connection with the Merger (*id.* ¶ 11 & Exhibit 1). The additional disclosures provided the Class with material information about NFS's financial projections and valuation, as well as additional details of the merger process, including alternative options that had been contemplated by Nationwide Mutual before making the Merger Proposal, all of which enabled Class members to make a more informed decision about whether they were receiving fair value for their shares. As noted by Plaintiffs' financial advisor in his Affidavit, the additional disclosures provided members of the Class with significant additional information upon which to assess the Proposed Merger at the revised offer price. *See* Golan Decl., Exhibit 2 ¶¶ 9-14.

6

Thus, balanced against the possibility that the Class members might have received nothing by going forward on the merits of their claims, this factor weighs heaving in favor of approving the proposed Settlement.

**B.    The Complexity, Expense, and Likely Duration of the Litigation**

In determining the fairness of the Settlement, courts also consider "[t]he complexity, expense and likely duration of the litigation." *In re Telectronics*, 137 F. Supp. 2d at 1013; *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983). Moreover, most class actions "are inherently complex and settlement avoids the costs, delays, and multitude of other problems associated with them." *In re Telectronics*, 137 F. Supp. 2d at 1013 (quoting *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp.2d 164, 174 (S.D.N.Y. 2000)). As such, avoiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement. *See Ayers v. Haley Barbour, et al.,* 358 F.3d 356, 369 (5th Cir. 2004) ("settling now avoids the risks and burdens of potentially protracted litigation").

Here, the difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process, provide justifications for this Court's approval of the proposed Settlement. As of the time of the final settlement hearing, Plaintiffs' Counsel had spent more than 2,500 hours in pursuing this and related shareholder actions stemming from the Merger Proposal, incurred a lodestar in excess of $1.4 million, and incurred expenses of $75,000. *See* Golan Decl. ¶¶ 22-23 & Exh. 5. However, continued litigation against Defendants would have required further substantial duration and cost. If the Action had not settled, the parties would have engaged in a time-consuming, and likely disputed, discovery

program, and Defendants certainly would have filed motions to dismiss the Action. This would have resulted in the expenditure of many additional hours of effort, and great additional expense. Had the Action proceeded beyond the motion to dismiss stage, in addition to extensive fact discovery, the parties also would have engaged in expert discovery involving both the preparation of experts' reports and the deposition of each expert. *See In re Telectronics*, 137 F. Supp. 2d at 1013.

Beyond that and likely summary judgment motions, trial preparation would be a massive endeavor and require considerable additional time and resources. Counsel on both sides would have had to expend many hours preparing for direct and cross-examination, identifying and preparing the exhibits intended for use at trial, and filing and responding to pre-trial motion practice, including motions *in limine*. The trial itself would require weeks to conduct, if not longer. As the Court established at the final settlement hearing, Plaintiffs' Lead Counsel (and Defendants' counsel) are certainly aware of what is required to conduct a trial of a complex class action, and those types of efforts and costs must be considered in connection with the instant motion to approve the Settlement. In complex class action litigation such as this, those expenses will burden any recovery obtained for the Class, if Plaintiffs were to succeed. Moreover, even a victory at trial might be lost through post-trial motions or likely appeals. *See, e.g., Catelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 213 (S.D.N.Y. 1992).

Thus, this factor also weighs in favor of approving the proposed Settlement. It secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation.

### C. The Stage of Proceedings and Amount of Discovery

To insure that Plaintiffs have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement, the stage of the proceedings and the discovery taken must be considered. *In re Telectronics*, 137 F. Supp. 2d at 1015; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 502 (E.D. Mich. 2000).

In the present case, Plaintiffs' Counsel conducted substantial factual research concerning NFS, including the review and analysis of its SEC filings, news reports, and analyst reports. At the same time, Plaintiffs' Counsel performed legal research regarding their claims against Defendants and consulted with experts regarding damages, accounting, valuation, and other pertinent issues. Plaintiffs also received relevant documents from Defendants, and thereafter took depositions of four witnesses with particularized access to information and the decision-making processes within Nationwide Mutual, the special committee and NFS's management and board. *See* Golan Decl. ¶ 12. Thus, the Settlement occurred only after Plaintiffs and their counsel had the opportunity to assess the facts supporting their claims, the legal and factual defenses likely to be raised by Defendants, the difficulty of establishing damages, and the risks of continued litigation. Accordingly, although the parties were able to negotiate the Settlement at a relatively early stage of the proceedings, all of the parties had a "clear view of the strengths and weaknesses of their cases." *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985).

Hence, the record before this Court clearly demonstrates that both sides in this conflict have been afforded an adequate opportunity to conduct sufficient discovery to be fully apprised about the legal and factual issues presented as well as the strengths and weaknesses of their cases. Both sides made a well-informed decision to enter into the

proposed Settlement agreement. This weighs in favor of approving the proposed Settlement.

### D. The Judgment of Experienced Counsel

The view of experienced counsel favoring the settlement is entitled to great weight. *In re Telectronics*, 137 F. Supp. 2d at 1015-16; *In re Art Materials*, 100 F.R.D. at 371. Indeed, it is well settled that, in approving a class action settlement, the court should "defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs." *Vukovich*, 720 F.2d at 922-23; *see also Kogan v. AIMCO Fox Chase, L.P.*, 193 F.R.D. 496, 501 (E.D. Mich. 2000) (citing *Bronson v. Board of Edu.*, 604 F. Supp. 68, 73 (S.D. Ohio 1984)). Significantly, however, the deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered." *Vukovich*, 720 F.2d at 922-23. Furthermore, the court's approval is contingent upon "proof that the settlement was the product of arm's-length bargaining entered into after there had been sufficient discovery to enable counsel to act intelligently." *Stull v. Baker*, 410 F. Supp. 1326, 1332 (_.D.N.Y. 1976).

In the instant case, both Plaintiffs' and Defendants' counsel are experienced practitioners in the field of complex class actions, including so-called "deal cases" like the present case. Counsel for both sides urge final approval of the proposed Settlement based upon their experience, their knowledge of the strengths and weaknesses of the case, their analysis of the discovery taken in the case, the risks associated with this type of litigation, the likely recovery at trial and on appeal, and other factors considered in evaluating the proposed class action settlement. In addition, the Court determines that the proposed Settlement has been negotiated vigorously and at arm's-length by Plaintiffs and their counsel on behalf of the Plaintiff Class. The Court further finds that, at all

times, Plaintiffs acted independently and that their interests coincide with the interests of the Plaintiff Class.

In this regard, the Court notes that Mr. Edward Coppinger, a business representative and elected official of Plaintiff IBEW Local 98, attended the settlement hearing on June 23, 2009, and was prepared to answer any questions concerning the Plaintiffs' supervision of the litigation, and authorization and support of the proposed Settlement.

The Court also gives weight to the representations made by Plaintiffs' Counsel at the hearing and in the Golan Decl., including, *inter alia*, that: (1) during the course of the litigation, Plaintiffs' Counsel provided to counsel for Defendants, and their financial advisors, various analyses of Plaintiffs' valuation expert, supporting Plaintiffs' view that the initial offer made by Nationwide Mutual was insufficient and did not constitute a fair price to NFS Class A shareholders; (2) Plaintiffs, their counsel and their valuation expert determined, through their own analyses, that a fair price would be within a range of $51 to $54 per share; and (3) the discovery taken by Plaintiffs indicated that, while Plaintiffs and the special committee negotiated and ultimately agreed to a revised Merger price of $52.25 per share – a 10.7% increase over the initial Merger Proposal, and a 28% premium over the price of NFS stock the day before the Merger Proposal was made public – internal forecasts, projections and strategic plans evidenced a decline in the performance and expected results of NFS, consistent with the overall market decline during the period from March 10, 2008, when the initial Merger Proposal was made public, to August 6, 2008, when the revised Merger price was agreed to by the special committee and by Plaintiffs, the latter agreement being reflected in a Memorandum of

Understanding ("MOU") entered into that day between Plaintiffs and Defendants. *See, e.g.,* Golan Decl. ¶¶ 8-10.

Based on the foregoing, it is evident that Plaintiffs and Defendants made a well-informed decision to enter into the proposed Settlement. Therefore, this factor also weighs in favor of approving the proposed Settlement.

### E. The Nature of the Negotiations

In appraising the fairness of the proposed Settlement, the Court has also considered the nature of the negotiations. *In re Dun & Bradstreet*, 130 F.R.D. at 372. As noted above, the Court finds that the proposed Settlement is the product of intensive, arm's-length negotiations between highly experienced counsel. Moreover, the extensive financial and factual analysis conducted by both sides provide the Court with comfort that it can and should give significant weight to the belief of experienced counsel that the Settlement is in the best interest of the Class. *In re* Telectronics, 137 F. Supp. 2d at 1016 (citing *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 176 F.R.D 158, 184, (E.D.Pa. 1997).

Indeed, while agreeing in principle to settle the Shareholder Actions through the MOU signed on August 6, 2008, Plaintiffs' Counsel reserved the right to (a) conduct further document and deposition discovery, and (b) provide input on the final proxy statement to be issued to NFS shareholders in advance of the shareholder vote on the Merger. In addition to reviewing documents pertinent to the Proposed Merger and consulting with a financial consultant, Plaintiffs' Counsel also conducted depositions of four key participants in the negotiation and valuation efforts of NFS and Nationwide Mutual: James Brocksmith, a member of the special committee; Richard Puccio, a representative of the Special Committees' financial advisor; Harry Halowell, a

Nationwide Mutual officer familiar with the timing and initiation of the Merger Proposal; and Roger Green, an NFS representative familiar with NFS's forecasts and strategic plans. *See* Golan Decl. ¶ 12.

Through all of these efforts and analyses of the Proposed Merger, as initially proposed and as eventually put to NFS shareholders, the Court finds that Plaintiffs and their counsel have made a thoroughly considered judgment that the Settlement is not only fair, adequate and reasonable, but an excellent result for the Class. The $52.25 per share revised offer was 12% more than NFS's closing price on August 6; it was 10.7% higher than Nationwide Mutual's initial offer of March 10, 2008 (providing an aggregate benefit of $232.8 million to the members of the Class); and it was negotiated in the midst of an overall decline in the financial markets, and apparently while internal forecasts for NFS indicated some decline in its projected results. These facts further confirm the fairness, adequacy and reasonableness of the Settlement.

### F.    Objections Raised By Class Members

In considering a class action settlement, the Court should also look to the reaction of the class members. *Olden v. Gardner*, 294 Fed. Appx. 210, 217 (6th Cir. 2008).  The lack of significant objections is powerful evidence of the fairness of a proposed settlement. *See Brotherton v. Cleveland*, 141 F. Supp. 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.") (citing 2 Herbert Newberg &Alba Conte, Newberg on Class Actions, § 11.48 (3d ed. 1992)); *In re Art Materials*, 100 F.R.D. 367 at 382 (noting that the overwhelming approval of a proposed settlement by the class members "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement").

Here, there were nearly 125,000 notices sent by mail to persons identified as holders of NFS stock, and the parties further published a summary notice in *The Wall Street Journal*. *See* Platt Aff. ¶¶ 2-7. Notice of the proposed Settlement was also sent to an appropriate State Official in each of the 50 states, and to the Attorney General of the United States. *Id.* ¶ 8. In response, there was only one objection submitted in opposition to the proposed Settlement, and that objection did not state or provide any evidence that the objectors even held NFS Class A stock. *See* Golan Decl. ¶ 20 & Exhibit 3. Thus, the objectors failed to establish their membership in the Class or their standing to object to the proposed Settlement. Moreover, as noted in Plaintiffs' Memorandum of Law in support of the Settlement and at the settlement hearing, this sole objection is cursory at best and does not even mention the increased share price paid through the Merger or the additional disclosures resulting from the Action, and was submitted by a "frequent flyer" who has been banned by a number of courts from making further filings in those courts without prior court approval.

As such, the Class reaction indicates that the Class supports the Settlement, and this factor thus also weighs in favor of approving the proposed Settlement.

### G. The Public Interest

The Court notes that the public interest also favors approval of the proposed Settlement. First, there is certainly a public interest in settlement of disputed claims that require substantial federal judicial resources to supervise and resolve. The proposed Settlement ends potentially long and protracted litigation and frees the Court's valuable judicial resources. As the Sixth Circuit has stated:

> Settlement agreements should . . . be upheld whenever equitable and policy considerations so permit. By such agreements are the burdens of trial spared to the parties, to other litigants waiting their turn before over-

14

> burdened courts, and to citizens whose taxes support the latter.  An
> amicable compromise provides the more speedy and reasonable remedy
> for the dispute.

*Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir.), *cert. denied* 429 U.S. 862

(1976); *accord In re Telectronics*, 137 F. Supp. 2d at 1025; *In re Dun & Bradstreet*, 130

F.R.D. at 372.

Second, through the proposed Settlement, individual and institutional investors

received an aggregated economic benefit of $232.8 million through the increased Merger

consideration.  Especially now, when investors (including public and private pensions

funds like Plaintiffs here) have suffered significant declines in the value of their

investment portfolios, such a benefit should surely be welcome by the members of the

Class.

Second, the Court concludes that this factor, like the first six factors, weighs in favor of

approving the proposed Settlement.

## II.    Class Certification

The Court has previously conditionally certified the Class for settlement purposes

in the Preliminary Approval Order.  However, the benefits of the Settlement can be

realized only through the final certification of a settlement class.  Here, in light of the

substantial benefits being conferred on the Class in the Settlement, and the

appropriateness under Rule 23 of the class certification being sought jointly by Plaintiffs

and Defendants for settlement purposes, the Court finds that the proposed Class satisfies

each requirement of Rule 23(a), (b)(1) and (b)(2).

15

### A.  Rule 23(a) Analysis

The four requirements of Rule 23(a), numerosity, commonality, typicality and adequacy are well recognized and defined by the courts.  *See Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).  As demonstrated below, these four requirements are satisfied in this Action.

### 1.  Numerosity

Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable.  Fed. R. Civ. P. 23(a)(1).  The Sixth Circuit has recognized that although "[t]here is no strict numerical test for determining impracticability of joinder," "[w]hen class size reaches substantial proportions, [], the impracticability requirement is usually satisfied by the numbers alone." *In re Am. Medical Syst.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  As a result, numerosity is generally presumed when a claim involves nationally traded securities.  *Picard Chemical Profit Sharing Plan v. Perrigo Co.*, Nos. 95-CV-290, 1996 U.S. Dist. LEXIS 16330, at *16 (W.D. Mich. Sept. 27, 1996) (internal quotations and citation omitted).

Here, the proposed Class consists of all persons and entities who held NFS Class A shares during the period between March 10, 2008 and January 1, 2009.  As reflected in NFS's Form 10-K dated December 31, 2008, NFS had 46.3 million of Class A common stock outstanding as of December 31, 2008, and there were approximately 125,000 notices mailed to potential Class members, *i.e.*, persons who are shown on the stock transfer records as owners of NFS Class A shares during the period when the Proposed Merger was outstanding.   Therefore, these is not question that the Class is so numerous

16

that joinder of all members would be impracticable. Thus, numerosity is present.

## 2. **Commonality**

Rule 23(a)(2) requires the existence of questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). However, "[t]he commonality test is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." *In re Am. Med. Sys.*, 75 F.3d at 1080 (internal quotations and citation omitted). As such, when a plaintiff alleges a common course of conduct arising out of a single set of operative facts, the commonality requirement is generally satisfied. *See Yadlosky v. Grant Thornton L.L.P.,* 197 F.R.D. 292, 298 (E.D. Mich. 2000); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 104 (S.D.N.Y. 1999).

Here, the commonality requirement is easily satisfied because all class members share several legal and factual issues. In general, determining Defendants' liability for alleged violations of fiduciary duties is common to all Class members because a breach affects all non-affiliated shareholders. Similarly, whether the Merger Proposal was unfair to the public shareholders of NFS Class A stock, and whether it was timed to unfairly benefit Nationwide Mutual at the expense of NFS's public shareholders, are questions common to the Class. And, of course, whether the Settlement is fair, reasonable and adequate is a question common to the Class.

Accordingly, there is a common nucleus of operative facts and issues of law affecting all Class members. *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 279 (S.D.N.Y. 1999) (commonality satisfied "[b]ecause a single, continuous conspiratorial artifice is alleged, the relevant proof will not vary among class members, and the case

presents a fundamental question of the utmost importance to all class members."). Thus, the commonality requirement is satisfied.

### 3. **Typicality**

Rule 23(a)(3) requires that the claims asserted by the plaintiff be typical of the claims of the class. *In re Broadwing*, 252 F.R.D. at 377. The Sixth Circuit has held that "a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *In re Am. Med. Sys.*, 75 F.3d at 1082.

As noted above, the claims asserted by Plaintiffs are based upon the same legal theories and arise from the same course of conduct that impacts all Class members. Moreover, differing degrees of injury among class members does not necessarily defeat typicality if the basic injury each class member asserts it the same. *Bittinger v. Techumseh Prods. Co.*, 123 F.3d 877, 885 (6th Cir. 1997). Thus, Plaintiffs and the Class have asserted a common injury and the typicality requirement of Rule 23(a)(3) is satisfied. *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995) ("'As long as plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish necessary typicality.'") (quoting *In re Amerifirst Sec. Lit.*, 139 F.R.D. 423, 429 (S.D. Fla. 1991)).

### 4. **Adequacy**

Rule 23(a)(4) requires "the representative parties will fairly and adequately protect the interests of the class." Due process demands this inasmuch as a final judgment will bind all class members. *In re Am. Med. Syss.*, 75 F.3d at 1083.

To satisfy the adequacy of representation requirement, a plaintiff must satisfy two elements: (1) "the representative must have interests common with the unnamed members of the class;" and (2) "it must be shown that the representatives – through qualified counsel – will vigorously prosecute the interests of the class." *In re Broadwing*, 252 F.R.D. at 378.

Here, the first element is satisfied. Plaintiffs' interests are aligned with those of the Class as the factual and legal claims of Plaintiffs and the Class arise from the same nucleus of operative facts and course of conduct by Defendants.

The second element is also satisfied. Plaintiffs retained counsel who have successfully prosecuted numerous complex class actions in courts throughout the United States, and were willing to and demonstrated here that they would vigorously and competently prosecute this Action. As noted at the settlement hearing, Plaintiffs' Counsel have undertaken complex class action and securities-based actions successfully in the past, and the proposed Settlement here further confirms the Court's finding that Plaintiffs' Counsel is qualified, experienced, and capable of prosecuting the Action in satisfaction of Rule 23(a)(4).

### B.     Rule 23(b) Analysis

In addition to satisfying the requirements of Rule 23, a class action must also satisfy one of the provisions of Rule 23(b). Here, the Court finds that proposed Settlement Class satisfies both Rule 23(b)(1) and (b)(2), making final certification of the proposed Settlement Class appropriate in the present case.

### 1.     Rule 23(b)(1)

Rule 23(b)(1) authorizes a mandatory class action

> if the prosecution of separate actions by or against individual members of
> the class would create a risk of (i) inconsistent or varying adjudications
> with respect to individual members of the class which would establish
> incompatible standards of conduct for the party opposing the class, or (ii)
> adjudications with respect to individual class members that, as a practical
> matter, would be dispositive of the interests of the other members not
> parties to the individual adjudications or would substantially impair or
> impede their ability to protect their interests.

*Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 431 (N.D. Ohio 2008) (quoting Fed.

R. Civ. P. 23(b)(1)).  Thus, in cases, as this one, where "the prosecution of separate

actions could lead to inconsistent adjudications," certification under Rule 23(b)(1) is

appropriate.  *Id.* (citing *Fox v. Massey-Ferguson*, 172 F.R.D. 653, 665 (E.D. Mich.

1995)).  Here, absent class certification, the various Shareholder Actions filed against the

Defendants could result in inconsistent judgments, *e.g.*, regarding whether the transaction

should or should not proceed.    Accordingly, certification under Rule 23(b)(1) is

appropriate.

### 2. Rule 23(b)(2)

Rule 23(b)(2) also authorizes a mandatory class action "if the party opposing the

class has acted or refused to act on grounds that apply generally to the class, so that final

injunctive relief or corresponding declaratory relief is appropriate respecting the class as

a whole." *Id.*  Here, the alleged misconduct of Defendants affected the proposed Class in

a way that is generally applicable to the entire Class, and injunctive relief with respect to

the proposed transaction was sought.  Moreover, the benefits of the proposed Settlement

apply to the entirety of the Settlement Class.  Thus, certification under Rule 23(b)(2) is

appropriate. *See In re Broadwing*, 252 F.R.D. at 379 (finding certification under Rule

23(b)(2) appropriate where the plaintiffs alleged that the defendants breached their

fiduciary duties to the Class because the conduct was "generally applicable to the class.").

For the above reasons, the Court grants Plaintiffs' motion to approve the Settlement Class. The Court hereby approved the maintenance of the Action as a class action pursuant to Fed. R. Civ. P. Rule 23(a), 23(b)(1) and (b)(2), with the Class being defined as follows:

> All record holders and beneficial owners of Nationwide Financial Services, Inc.'s shares of Class A common stock at any point in time between March 10, 2008 and January 1, 2009, inclusive, and their assigns and successors in interest, immediate and remote, including without limitation the legal representatives, heirs, executors, administrators, trustees, transferees and beneficiaries by operation of law or otherwise, of all such foregoing holders and/or owners (the "Class").

The Class certified by this Court for settlement purposes does *not* include Defendants and their "affiliates" and "associates," as those terms are defined in Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934.

### III.    Attorneys' Fees and Costs

The Court conducted a hearing on this matter on June 23, 2009. On the basis of that hearing, and Plaintiffs' motion and supporting materials, the Court finds as follows.

Plaintiffs' Counsel achieved a proposed Settlement that provided an increased payment totaling $232.8 million to members of the Class as a result of the increase in the Merger consideration paid to NFS Class A shareholders, as well as additional disclosures that were placed in the final proxy statement issued to NFS shareholders. Except for the lone objection to the proposed Settlement, submitted by persons who did not even establish their membership in the Class, there were no other objections to the proposed Settlement. Moreover, as noted above, the members of the Class have already received

the benefit of the Settlement, since the final proxy statement was issued with the additional disclosures and the increased Merger consideration of $5.05 per share was paid upon consummation of the Merger.

Based on the result achieved in the case, Plaintiffs' Counsel applied for a fee and expense award of $3.5 million. Based on representations made to the Court, the Court finds that the amount of the fee and expense application was negotiated by Plaintiffs' and Defendants' Counsel after all terms and conditions of the proposed Settlement had been negotiated, and that Nationwide Mutual has agreed to pay an award up to $3.5 million, if and as awarded by the Court, over and above the increased Merger consideration paid to members of the Class upon consummation of the Merger.

The action was undertaken and prosecuted on a wholly contingent basis. Plaintiffs' Counsel have submitted summaries of the time, lodestar and expenses incurred in the prosecution of the case, which show that they spent approximately 2,600 hours on the case; incurred a lodestar of $1,413,433.00; and incurred expenses of $75,091.80.

The Court must ensure that class counsel are fairly compensated for the amount of work done and the results achieved. *Rawlings* v. *Prudential-Bache Props, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). The core inquiry is whether an award is reasonable under the circumstances. *Id.* at 517. Absent adequate compensation, counsel will not be willing to undertake the risk of common fund class action litigation. The Sixth Circuit has long recognized that, "[a] litigant who creates a 'common fund' or 'substantial benefit' allocable with some exactitude to a definite group of persons may acquire an equitable claim against that group for the costs incurred in creating the fund or benefit." *Smillie v.*

22

*Park Chem. Co.*, 710 F.2d 271, 275 (6th Cir. 1983); *accord Ramey v. Cincinnati Enquirer, Inc.,* 508 F.2d 1188 (6th Cir. 1974).

The Court's function is to determine what the lawyer would receive in the market and to compensate counsel at the fair market value. *Revco Securities Litigation, Arsam Co. v. Saloman Brothers, Inc.*, 1992 U.S. Dist. LEXIS 7852 *10, 12 (N.D. Ohio, May 6, 1992) (citing *inter alia, Louisville Black Police Officers Organization v. City of Louisville*, 700 F.2d 268, 277 (6th Cir. 1983)). Here, the fee and expense award being sought ($3.5 million) is just 1.5% of the overall economic benefit of $232.8 million achieved for the Class through the Settlement. This 1.5% percentage requested here is reasonable and appropriate in light of prevailing market rates and well below contingent fee percentages common in contingent fee plaintiffs' litigation.

Courts calculate an appropriate attorney's fee in common benefit class actions by two methods: (1) the percentage of the benefit method; and (2) the lodestar method. "Use of either the lodestar or percentage of the fund method of calculating attorney's fees is appropriate in common fund cases, and the determination of which method is appropriate in any given case will depend upon its circumstances." *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993); *New England Health Care Employees Pension Fund v. Farley, et al.*, 234 F.R.D. 627 (E.D. Ky. 2006).

The Sixth Circuit accepts either method and "requires only that awards of attorney's fees by federal courts in common fund cases be reasonable under the circumstances." *Rawlings*, 9 F.3d at 517 (citing *Smillie v. Park Chem.*, 710 F.2d at 275). Each method has its respective advantages and disadvantages. *See Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1278-79 (S.D. Ohio 1996). However, while a court may award a

23

fee based upon the hours expended, hourly rates of the attorneys involved, and a multiplier to take into account the case's contingency, in the Southern District of Ohio, the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier. *In re Broadwing*, 252 F.R.D. at 381. To compensate for the delay Plaintiffs' Counsel encounter in receiving compensation, it is also appropriate to use current fee rates in calculating the lodestar. *See Missouri v. Jenkins*, 491 U.S. 174, 283-84 (1989); *Basile v. Merrill Lynch*, 640 F. Supp. 697, 703 & n.7.

While determination of the fee based upon the common fund percentage approach is most appropriate here, the fee requested, if calculated by the lodestar plus multiplier method, would result in a multiplier of 2.4 times the lodestar. A multiplier of between 2.0 and 5.0 existed in the fee awards in this District in *Basile v. Merrill Lynch* and *Brotherton v. Cleveland*, further confirming the reasonableness of the 1.5% percentage requested based on the economic benefit achieved for the Class.

In *Ramey v. Cincinnati Enquirer*, the Sixth Circuit identified six factors for consideration in determining the reasonableness of a fee award:

1.  The value of the benefits rendered to the class;

2.  Society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;

3.  Whether the services were undertaken on a contingent fee basis;

4.  The value of the services on an hourly basis;

5.  The complexity of the litigation; and

6.  The professional skill and standing of all counsel.

508 F.2d at 1196; *see also In re Broadwing*, 252 F.R.D. at 381.

Consideration of these factors confirms that the requested fee of 1.5% of the economic benefit of the Settlement is appropriate. Plaintiffs secured a substantial benefit for the Class and there is a public interest in ensuring that attorneys willing to represent public shareholders are adequately paid so that they and others like them will continue take on such cases. Protecting retirement funds of workers and other investors is of genuine public interest and, thus, support a fully compensatory fee award.

Here, the Settlement provides both substantial economic and non-economic benefits to the Class. The final offer price of $52.25, which was increased from $47.20, constitutes an economic benefit to the Class of $5.05 per share. Multiplying the $5.05 per share value by the 46.1 million Class A shares owned by the Class yields a total value of $232.8 million. Thus, the requested award of $3.5 million, which is inclusive of Plaintiffs' Counsel's expenses, represents only 1.5% of the total value of that benefit.[1]

Rewarding attorneys in securities class actions is important because absent class actions, most individuals would lack the resources to litigate cases, and individual recoveries are often too small to justify the burden and expense of such litigation. *In re Telectronics,* 137 F. Supp.2d at 1043 ("Attorneys who take on class action matters serve a benefit to society and the judicial process by enabling ... claimants to pool their claims and resources" to "achieve a result they could not obtain alone."). A class action was

---

[1] The Settlement also conferred non-economic benefits on the Class in the form of additional, material disclosures made in the Proxy provided to shareholders in advance of the vote on the buyout. The additional disclosures, which were the result of the efforts of Plaintiffs and their counsel, provided additional information regarding the relationship between Nationwide Corporation and NFS, the options considered by Nationwide for deploying excess capital, and the analyses of the special committee and its financial advisor. The economic and non-economic benefits conferred on NFS shareholders merit an award of attorneys' fees and expenses in the amount requested.

therefore the most cost efficient manner to litigate this Action on behalf of the Class, and the agreement between Plaintiffs and Defendants in this Action and the cases filed in two other courts to prosecute the case only in this Court furthered the efficiency goal of class action litigation.

The reaction of the Class also supports the requested fee and expense award. As discussed above, nearly 125,000 individual notices were sent to former shareholders of NFS who are potential members of the Class. In response, there was only one objection to the fee and expense request, and this lone objection does not even include the name or address of the objector. *See* Golan Decl. ¶ 20 & Exhibit 4. Nor does it provide any basis for the objection or any analysis of the factors this Court must assess in determining an appropriate fee, including among others, the large economic benefit obtained for the Class in connection with the Settlement. Therefore, this objection does not supply any basis upon which this Court should deny the fee and expense application.

Further, as noted above, Plaintiffs' Counsel accepted this case on a contingent basis; have received no compensation during the course of this litigation while incurring expenses in litigating for the benefit of the Class; and expended nearly 2,600 hours of attorney and paraprofessional time prosecuting this case on behalf of the Class. The hourly rates of Plaintiffs' Counsel multiplied by the number of hours expended results in a total lodestar of $1,413,433.00. As such, Plaintiffs' Counsel's fee request represents a lodestar multiple of just 2.42, underscoring the reasonableness of the requested fee. *See In re Broadwing*, 252 F.R.D. at 381 ("A multiplier of between approximately 2.0 and 5.0 existed in the fee awards in this District in *Basile v. Merrill Lynch* and *Brotherton v. Cleveland*, further confirming the reasonableness of the 23% common fund requested.").

This case involved highly-specialized and complex areas of law, which supports the requested fee and expense award. Plaintiffs made claims that required Plaintiffs' Counsel to analyze and evaluate complex questions of law and fact, including the fiduciary duties owed by NFS directors to their shareholders, the economic terms of Nationwide Mutual's initially proposed acquisition price, whether the transaction was subject to the so-called "entire fairness" doctrine or the business judgment rule, and the sufficiency of Nationwide Mutual's and NFS's disclosures in light of applicable SEC standards and disclosures made in similar proposed transactions. Hence, the complexity of the case further supports the requested fee.

Finally, the prosecution of the claims in the Shareholder Actions required the participation of highly skilled and specialized attorneys. Plaintiffs and their counsel were faced with formidable opposition, as Defendants were represented by very skilled and experienced counsel in securities and transaction litigation, who could draw upon the exceptional resources of their nationally recognized law firms. Courts have often recognized that the skill and abilities of defense counsel is a factor that may be considered when evaluating a fee request. *In re Delphi Corp. Securities, Derivative & "ERISA" Litigation*, 248 F.R.D. 483, 504 (E.D. Mich. 2008).

On the Plaintiffs' side, as shown in prior submissions to the Court and as noted at the hearing, Plaintiffs' Counsel, Barrack, Rodos & Bacine and Carney Williams Bates Bozeman & Pulliam, PLLC, are highly experienced in this type of transaction case. The quality and skill in the work performed by Plaintiffs' Counsel is evident through the significant economic and non-economic recovery achieved in this Action. Accordingly,

the quality and skill involved in the services performed by Plaintiffs' Counsel supports the requested fee.

In sum, the above factors fully support the fee requested. Plaintiffs' Counsel's efforts were performed on a wholly contingent basis, despite significant risks and in the face of determined opposition. Under these circumstances, it follows that Plaintiffs' Counsel are entitled to the award of a reasonable percentage fee based on the benefit conferred. Under all of the circumstances present here, the Court finds that the requested fee and expense award of $3.5 million is fair and reasonable, and will be awarded by the Court.

### IV. Disposition

For the foregoing reasons, the Court **GRANTS** Plaintiffs' Motion for Final Approval of the Proposed Class Action Settlement and Plaintiffs' Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Doc. 25).

Base on the above, and the Stipulation of Settlement, dated January 1, 2009, the Court **ORDERS, ADJUDGES AND DECREES** as follows:

1.      This Final Approval Order incorporates and makes part hereof the Stipulation of Settlement, filed with this Court on January 15, 2009, including Exhibits A through E thereto. Unless otherwise defined in this Final Approval Order, the capitalized terms in this Final Approval Order have the same meaning as they have in the Stipulation.

2.      The Court has personal jurisdiction over all Settlement Class Members (as defined below) and has subject matter jurisdiction over the Action, including without

28

limitation, jurisdiction to approve the proposed Settlement, grant final certification of the Settlement Class and dismiss the Action on the merits and with prejudice.

3.      The Notice and Summary Notice of Pendency of Class Action, Class Action Determination, Proposed Settlement of Class Action, Settlement Hearing, and Right to Appear ("Notice to the Class") has been given to the Class (as defined hereinafter), pursuant to and in the manner directed by the Preliminary Approval Order; proof of the mailing of the Notice to the Class and publication of Summary Notice to the Class was filed with the Court by counsel for Defendants; and full opportunity to be heard has been offered to all parties, the Class and persons in interest.  The form and manner of the Notice and Summary Notice to the Class is hereby determined to have been the best notice practicable under the circumstances and to have been given in full compliance with each of the requirements of Federal Rule of Civil Procedure 23 and due process, and it is further determined that all members of the Class are bound by this Order and the Final Judgment.

4.      Notice under 28 U.S.C. § 1715(b) has been served on an appropriate State official (as defined in 28 U.S.C. § 1715(a)) in each state in which a Class member resides, pursuant to and in the manner directed by the Preliminary Approval Order; proof of service of such notice was filed with the Court by counsel for Defendants; and such service was completed ninety (90) or more calendar days before the entry of this Order and the Final Judgment, in compliance with 28 U.S.C. § 1715(d).  The form of the notice served under 28 U.S.C. § 1715(b) is hereby determined to have been in compliance with the requirements of 28 U.S.C. § 1715(b).

5.      Pursuant to Federal Rules of Civil Procedure 23(b)(1) and (b)(2):

a.      The Court specifically finds that (i) the Class, as defined below, is so numerous that joinder of all members is impracticable, (ii) there are questions of law and fact common to the Class, (iii) the claims of the Plaintiffs are typical of the claims of the Class, and (iv) the Plaintiffs will fairly and adequately protect the interests of the Class;

b.      The Court finds that the Class representatives and their counsel have adequately represented the interests of the Class with respect to the Action and the claims asserted therein;

c.      The Court finds that the requirements of Federal Rules of Civil Procedure 23(b)(1) and (b)(2) have been satisfied;

d.      The Action is hereby certified as a class action on behalf of all record holders and beneficial owners of Nationwide Financial Services, Inc.'s shares of Class A common stock at any point in time between March 10, 2008 and January 1, 2009, inclusive, and their assigns and successor in interest, immediate and remote, including without limitation the legal representatives, heirs, executors, administrators, trustees, transferees and beneficiaries by operation of law or otherwise, of all such foregoing holders and/or owners (the "Class"). Excluded from the Class are Defendants and their "affiliates" and "associates," as those terms are defined in Rule 12b-2 promulgated pursuant to the Securities Exchange Act of 1934; and

e.      Intermountain Ironworkers Trust Fund and International Brotherhood of Electrical Workers Local 98 Pension Fund are hereby certified as Class representatives and their counsel are certified as Class counsel.

6. The Stipulation and the Settlement provided therein is found to be fair, reasonable and adequate and in the best interests of the Class, and it is hereby approved. The parties to the Stipulation are hereby authorized and directed to comply with and to consummate the Settlement in accordance with its terms and provisions. The Action is hereby dismissed with prejudice as to all Defendants as against the named plaintiffs and all members of the Class. The Clerk is directed to enter and docket this Order in the Action.

7. The terms of the Stipulation and of this Final Approval Order and the accompanying Final Judgment shall forever be binding on Defendants, Plaintiffs, and all other Settlement Class Members, as well as their heirs, executors and administrators, predecessors, affiliates and assigns.

8. The Release is effective as of the Settlement Effective Date and fully, finally and forever discharges, among other things, the Releasees from any and all claims of liability arising from the Released Claims. The Released Claims are hereby compromised, settled, released, discharged and dismissed as against the Releasees on the merits and with prejudice by virtue of the proceedings herein, this Final Approval Order and the Final Judgment.

9. All Settlement Class Members (and their heirs, executors and administrators, predecessors, successors, affiliates and assigns) are permanently barred and enjoined from filing, commencing, prosecuting, intervening in, participating in (whether directly, representatively, or derivatively), or receiving any benefits or other relief from, any other lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on or relating in any way to the claims and

causes of action, or the facts and circumstances relating thereto, in the Shareholder Actions and/or the Released Claims (other than an appraisal proceeding under Section 262 of the Delaware General Corporation Law in connection with the Merger or to enforce rights conferred by the Settlement). All persons or entities are permanently barred and enjoined from organizing Settlement Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit based on, or relating to, the claims and causes of action, and/or the facts and circumstances relating thereto, in the Shareholder Actions and/or the Released Claims.

10. This Final Approval Order, the Final Judgment, and the Stipulation (whether or not consummated), any of its terms and provisions, any of the negotiations or proceedings connected with it, any of the documents or statements referred to in it, and any proceedings taken pursuant to it:

a. shall not be offered or received against any of the Defendants as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by any of the Defendants with respect to the truth of any fact alleged by any of the plaintiffs or the validity of any claim that has been or could have been asserted in the Shareholder Actions or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault or wrongdoing of the Defendants;

b. shall not be offered or received against any of the Defendants as evidence of a presumption, concession or admission of any fault, misrepresentation or

omission with respect to any statement or written document approved or made by any Defendant;

        c.     shall not be offered or received against the Defendants as evidence of a presumption, concession or admission with respect to any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the Defendants, in any other civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; *provided however*, that if the Stipulation is approved by the Court, this Final Approval Order, the accompanying Final Judgment or the Stipulation may be filed in any action against, or by any Defendant to support, a defense of *res judicata*, collateral estoppel, release, waiver, good faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim; and

        d.     shall not be construed as or received in evidence as an admission, concession or presumption against Plaintiffs or any of the Settlement Class Members that any of their claims are without merit, or that any defenses asserted by the Defendants have any merit.

11.     The Court finds that during the course of the litigation, all parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

12.     Plaintiffs' attorneys are hereby awarded fees and expenses in the amount of $3,500,000.00 in connection with the Action, which sum the Court finds to be fair and

reasonable and which shall be paid to Plaintiffs' attorneys in accordance with the terms of the Stipulation.

13.　　Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of the Stipulation.

14.　　If the Effective Date does not occur for any reason whatsoever, this Final Approval Order and the Final Judgment shall be deemed null and void and shall be of no force and effect whatsoever.

15.　　Without in any way affecting the finality of this Final Approval Order and the accompanying Final Judgment, the Court expressly retains continuing and exclusive jurisdiction over the parties and the Settlement Class Members for all matters relating to the Stipulation and of this Final Approval Order and Final Judgment, and for any other reasonably necessary purpose, including, without limitation:

　　　　a.　　enforcing the terms and conditions of the Stipulation (including without limitation, enforcement of the permanent injunction);

　　　　b.　　resolving disputes, claims or causes of action that, in whole or in part, are related to or arise out of the Stipulation, this Final Approval Order or the Final Judgment;

　　　　c.　　entering such additional orders as may be necessary or appropriate to protect or effectuate the Court's Final Approval Order and/or the Final Judgment; and

　　　　d.　　entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

16.　　The Court is contemporaneously entering the accompanying Final Judgment in accordance with Federal Rule of Civil Procedure 58.

IT IS SO ORDERED:

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT